IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EKOPEL D.O.O.<br>(a Slovenian company)<br><br>　　　　Plaintiffs,<br><br>　　　　　v.<br><br>CITIBANK N.A.<br>(a national banking institution),<br>aka CITIGROUP aka CITI<br>and<br><br>DOES 1-5<br><br>　　　　Defendants. | ACTION No.<br><br><br>**COMPLAINT**<br><br>**FOR ORDER OF ACCOUNTING<br>AND FOR DAMAGES** |

**NATURE OF ACTION.**

　　This action is brought by a Slovenian company, the intended beneficiary of two wire transfers in March of 2022, for $45,000 and $545,000, that never reached the beneficiary and were not returned to the payers overseas. Plaintiff makes a claim for accounting against the banking institution that served as providing correspondent account services and handled those transfers as an intermediary. Before bringing this action, plaintiffs made inquiries with several banks in the funds' movement chain, including one action initiated. CITIBANK appears to be the institution that seems to be responsible for the money in the broken chain of the wire transfers and which did not respond to the latest inquiry made on behalf of the plaintiffs to provide copies of the concrete documents showing the wire transfers. In the event discovery shows that CITIBANK is indeed the custodian of the missing funds, at present, intended for the commercial business beneficiaries,

1

plaintiffs make contingent claims for an Order to return their funds with damages, which relief is asserted in this action.

## PARTIES.

1.      Plaintiff EKOPEL D.O.O. (EKOPEL) is a company incorporated in Slovenia. EKOPEL was founded in 2014.  EKOPEL's address is Ulica Goce Delčeva 36, Ljubljana, Slovenia, tel.: +386 41 36 37 48.  The core activity of EKOPEL is the export sales of medical equipment and investment projects in the medical and social services sector on a «turn-key» basis. Information about EKOPEL can be found in the public domain on the website https://www.ekopel.org/.

2.      Defendant CITIBANK N.A., CITIGROUP INC., aka CITI (CITIBANK), is a national banking and financial institution. It has 16 branches in Washington, D.C., including 1225 Connecticut Avenue, N.W. Washington, DC 20036.  As a retail financial organization with about 720 branches nationwide, CITIBANK is affiliated with CITIGROUP Inc. or CITI, an American multinational investment bank and financial services corporation.  CITIBANK is a defendant in the present action because it has failed to cooperate in good faith in locating and identifying the wire transfers lost in the inter-banking system that other financial institutions submit have remained in CITIBANK.  CITIBANK has declined to cooperate in good faith to account for the transactions and submit the copies of the transaction passing CITIBANK, necessary to investigate and recover the lost funds.

3.      JOHN DOE ONE, and JOHN DOES 2-5 are the banking institutions and/or individuals acting in those banking institutions that are responsible for the delay of the transfers for $590,000, that has lasted over four months, or, as it stands now, possibly funds' loss or embezzlement of funds.  At this time, EKOPEL does not know exact information or who controls

the missing funds; therefore, further DOE Defendants, whose identity is yet unknown, may be joined in this action.

## JURISDICTION AND VENUE.

4.      Jurisdiction is proper under the diversity of citizenship test, where EKOPEL is a Slovenian company, and CITIBANK is an American national banking association.  The diversity of citizenship applies where a claim exceeds the statutory minimum of $75,000, pursuant to 28 U.S.C. §1332.

## FACTS

5.      As mentioned above, EKOPEL is in the business of exports of medical equipment, typically produced in the European Union, to Ukraine and other European countries.  EKOPEL has been in business since 2014 and has gained a solid business reputation for reliability.

6.      EKOPEL has many international customers buying the goods and materials offered by EKOPEL for exports, which include, as relevant here, Equipmed LLC and Ukr Med Service LLC, both incorporated in Ukraine.

7.      As a part of its regular business, on March 16, 2022, the above-mentioned Ukrainian company Equipmed LLC wire transferred (in the format of MT103) from its bank in Ukraine $45,000 (forty-five thousand) to EKOPEL as payment for medical equipment.

8.      On March 25, 2022, another Ukrainian company, Ukr Med Service LLC, made another commercial payment from the same bank in Ukraine by a wire transfer (MT103) to EKOPEL for $545,000 (five hundred forty-five thousand dollars).

9.      The total of two customers' payments was $590,000. The originating bank was JSC CB Globus (SWIFT: GLIBUA22), located in Kyiv, Ukraine.

10. The beneficiary bank in the payment instructions was Sberbank (SWIFT: SABRSI2X), located in Ljubljana, Slovenia, which was acquired and is now called N Banka D.D.

11. To date, neither of the two wire transfers reached the beneficiary, EKOPEL.

12. Both wire transfers, on March 16 and 25, were identical or similar for tracing purposes. The only difference was two different customers made the payments to EKOPEL.

13. The chain of the banking accounts for those wire transfers is as follows:

(A) JSC CB Globus (Kyiv, Ukraine);

(B) Bank Pivdennyy (Odesa, Ukraine);

(C) Bank of New York Mellon;

(D) CITIBANK;

(E) (possibly undisclosed intermediary bank); and

(F) N Banka D.D. (formerly Sberbank).

As stated above, EKOPEL never received either of the two wire transfers, at the end of that tracing chain.

14. On April 11, 2022, the Ukrainian customers of EKOPEL initiated the first tracing request with CITIBANK. Namely, upon those inquiries, JSC CB Globus, a Ukrainian bank, sent the required information along the payment (MT103) route. However, the funds have never been credited to the account of EKOPEL.

15. After repeated inquiries, on May 3, 2022, CITIBANK responded that this bank had released the payment on April 15, 2022. However, no specifics were provided, namely to whom CITIBANK "released" the funds. Out of extra precaution, the payers canceled those payments, but those funds have never been returned to them, nor have the funds reached the beneficiary, EKOPEL.

16. JSC CB Globus sent a SWIFT message to the beneficiary bank, N Banka D.D. (formerly Sberbank, Ljubljana), with the question concerning that payment. N Banka D.D. (formerly Sberbank Ljubljana) advised that they had received the MT103 on March 25, 2022, but that bank did not receive cover for that.

17. On July 15, 2022, EKOPEL, through its American counsel, sent the letters to the General Counsel's Offices of both CITIBANK and BNY Mellon.

18. Namely, EKOPEL's counsel sent the detailed letter to CITIBANK's office of the General Counsel,

19. With regard to the letter to BNY Mellon, the letter was addressed by email as follows: Office of General Counsel of BNY-Mellon, attn. J. Kevin McCarthy Whom It May Concern 240 Greenwich St., New York, NY 10286, by email to: kXXXXXXXXy@bnymellon.com. The original was also dispatched to the same addressee by U.S. Express Mail, the tracking information being available.

20. On July 25, 2022, CITIBANK responded that "…Upon review of the details provided in your inquiry, we were able to confirm the payment under UETR xxxxxxxxxxxxxxxxxxxxxxxxxxxxxf03b was received our reference number XXXXXXXXX0201 in the amount of $545,000.00 and has been returned to the remitter under E2220840005504. In addition, we also confirmed the payment under UETR xxxxxxxxxxxxxxxxxxxxxxxxxxx011d was received under our reference number XXXXXXXXXX0F01 in the amount of $45,000.00 and was returned under a new reference number XXXXXXXXX20F04." See the documentary group Exhibit (redacted).

5

21. It follows that CITIBANK received both wire transfers from BNY Mellon through correspondent accounts and then returned those to the remitter. Accordingly, it follows that the funds, $590,000, were returned to BNY Mellon.

22. Despite the request emailed to the General Counsel's Office of BNY Mellon on July 15, 2022, to respond within ten days, EKOPEL's American counsel received a response from BNY Mellon on August 16, 2022 which was seven days after EKOPEL filed that action.

23. However, those funds were not received by the Ukrainian bank, which had a correspondent account with BNY Mellon, the next financial institution in the tracing chain.

24. On August 9, 2022, EKOPEL filed in this Court a related action, captioned *Ekopel D.O.O. vs. BNY Mellon et al.*, 22cv2350.

25. Eight days after EKOPEL filed that case, BNY Mellon informed EKOPEL as follows: "Please be advised that I have asked the appropriate area of BNY Mellon to look into the two funds transfers referenced in your letter. On the basis of that review, please be advised as follows: "With respect to the funds transfer of March 16, 2022 initiated by Equipmed LLC (Ukraine), BNY Mellon returned funds to Bank Pivdennyy's account on March 24, 2022 and sent an MT199 message confirming the return. With respect to the funds transfer of March 25, 2022 initiated by Ukr Med Service LLC. (Ukraine), BNY Mellon paid these funds to Citibank on March 25, 2022, and thereafter BNYMellon received confirmation from Citibank to the effect that the payment had been released on April 15, 2022."

26. From BNY Mellon's response, it follows that the funds were actually at CITIBANK as of March 25, 2022. Then CITIBANK supposedly "released" those on April 15, 2022, without any information to wit: "released to whom" or what was "the destination of the wire transfers" for

6

such a "release." The term "release" used by CITIBANK is as vague and imprecise as it can get in the financial institutions' information concerning concrete wire transactions.

27. The response from BNY Mellon went on to assure: "At this time, BNY Mellon is not holding any funds related to either of these funds transfers nor has BNY Mellon had further involvement in either of these funds transfers."

28. It follows from BNY Mellon's response and denial, along with the denials from other banks, that the likely depository of those funds is actually CITIBANK, which has not accounted for the "release" of funds without disclosing the banking records where those funds were routed or instead remained at CITIBANK.

29. The position of two Ukrainian banks investigating that matter is that the funds are allegedly held with CITIBANK.

30. As a result, EKOPEL has been missing, since the wire transfers (MT103s) on March 16 and 25, respectively, the amounts of $45,000 and $545,000 in the banking system. All available evidence points to CITIBANK or BNY Mellon are highly likely, the financial institutions responsible, between them, for the missing funds and which may be the custodian of those funds at present.

31. As mentioned above, the unique codes of those two payments (UETR code) were identified as: xxxxxxxxxxxxxxxxxxxxxxxxxx011d  xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxf03b.

32. On July 29, 2022, EKOPEL's counsel sent a clarification inquiry to CITIBANK's office of the General Manager. The letter stated, among other things: "A. Wire transfer of $545,000, missing funds. Your letter advised that "the payment under UETR xxxxxxxxxxxxxxxxxxxxxxxxxxf03b was received under our reference number xxxxxxxxxx0201 in the amount of $545,000.00 and has been returned to the remitter under xxxxxxxxxx5504."

33. EKOPEL's demand letter for disclosure went on to require: "My clients have not received those funds back. Please indicate on (1) what date the return of funds was sent out, (2) the receiving bank, (3) receiving beneficiary, and/or (4) the wire transfer details' copy showing instruction, as necessary to trace the funds."

34. EKOPEL's letter went on to state the status of the second wire transfer as follows: "B. Wire transfer of $45,000, missing funds. Your response letter advised us that "the payment under UETR xxxxxxxxdce011d was received under our reference number xxxxxxxxx0F01 in the amount of $45,000.00 and was returned under a new reference number xxxxxxx0F04." My clients have not received those funds back either."

35. EKOPEL's letter stated the demand for disclosure: "Please indicate on (1) the date the return was sent out, (2) the receiving bank, (3) receiving beneficiary; and/or (4) the wire transfer details' copy, showing the instruction, as necessary to trace the funds."

36. On August 2, 2022, a Ukrainian bank, Globus, responded to EKOPEL's inquiry in detail, reconfirming that it does not have the funds at issue. Globus Bank's response was most detailed, on seven pages, showing goodwill and genuine effort to help the investigation, in contrast with the posture taken by CITIBANK, essentially stonewalling the second inquiry asking for proof of the wire transfers in a documentary form.

37. CITIBANK has not responded to that demand letter of July 29, 2022, asking for adequate disclosure of the documents.

38. The lack of response from CITIBANK has lasted for about 22 days to this date, which is in itself indicative of a banking institution's lack of diligence in responding to concrete inquiries on the substantial missing funds.

39. That declination or failure to respond on the end of CITIBANK has taken place against the background that the matter is not new to CITIBANK, and it had a long time to undertake its investigation and release the copies requested by EKOPEL.

40. EKOPEL has exhausted all possible avenues to resolve the issue of the missing funds out of court.

41. Thereby, EKOPEL's commercial losses continue to pile up in a medication market that requires expediency in working with customers and supplying the inventories of medications on a regular basis.

42. Namely, CITIBANK's not responding to the concrete inquiry did not comport to the requirements of due diligence in the banking institutions under the applicable statutes and regulations.

43. Thereby, EKOPEL understands that CITIBANK, like other American banks, is bound by the Bank Secrecy Act (BSA), 31 USC 5311 *et seq*. Yet, CITIBANK's merely not responding to an urgent inquiry concerning the lost funds was unwarranted.

## COUNT I. Accounting.
### (against CITIBANK and DOES 1-5)

44. Plaintiff EKOPEL incorporates by reference the allegations in the prior Paragraphs 1 to 43 and further states as follows.

45. CITIBANK was in the tracing chain of both wire transfers.

46. CITIBANK has acted as a correspondent account host for a Ukrainian bank and a transmitter of the funds to other banks or institutions.

47. CITIBANK's response shows that Citibank wired out both amounts to the remitter, which points to CITIBANK.

48. As the tracing evidence shows, CITIBANK may have been, highly likely, the bank to which evidence pointed that the funds may be highly likely, held by that banking institution that has not responded to reasonably urgent inquiries.

49. Plaintiff EKOPEL is entitled to an accounting from Defendant CITIBANK to the fullest extent allowed by the Bank Secrecy Act, under the circumstances of these losses of two wire transfers.

50. The Court should issue the necessary Orders for CITIBANK to disclose the banking information concerning the lost funds.

### COUNT II.  Unjust enrichment.
### (against DOES 1-5)

51. Plaintiff EKOPEL incorporates by reference the allegations in Paragraphs 1 to 43 and further states as follows.

52. As stated above, the funds of which EKOPEL was the beneficiary, in the total of $590,000, became lost for it in the chain of the wire transfers.

53. One or another financial institution has custody of the funds and presumptively uses those funds in the pool of assets under its control, contrary to the purpose of MT103s.

54. On its end, EKOPEL has been deprived of the funds for $590,000 and has been unable to use those in its exports-imports business. That withholding of operative capital of the exporter, EKOPEL, has resulted in commercial losses and has put EKOPEL in a difficult position, including reputational exposure on the reliability issue.

55. Plaintiff EKOPEL is entitled to relief under the equitable theory of unjust enrichment for the missing funds, $590,000, that have been used by a financial institution, for the moment identified as JOHN DOE ONE.

## COUNT III.  Money had and received.

### (against DOES 1-5)

56. Plaintiff EKOPEL incorporates by reference the allegations in Paragraphs 1 to 43 and further states as follows.

57. As stated above, the funds of which EKOPEL was the beneficiary, a total of $590,000, became lost for it in the course of the wire transfers.  One or another financial institution has custody of those funds and presumptively uses those funds in the pool of assets under its control.

58. On its end, EKOPEL has been deprived of the funds for $590,000 and has been unable to use those in the course of its exports-imports business.

59. That withholding of operative capital of the exporter, EKOPEL, has resulted in substantial commercial losses, going beyond merely the lost funds.

60. For example, the two customers may decline to place orders with EKOPEL anymore.  Damage to EKOPEL's commercial reputation is continuous until this matter is resolved in a definite fashion and the funds are returned.

61. Plaintiff EKOPEL is entitled to relief under the equitable theory of money had and received for the missing funds, $590,000, that have been used by a financial institution, for the moment identified as DOE ONE.

**WHEREFORE,**

Plaintiff EKOPEL seeks the following relief:

(a) The Court Orders to CITIBANK to provide documentation and other information concerning the missing funds.

(b) Damages for the losses resulting in EKOPEL being deprived of access to its operating capital in the amounts indicated above.

(c) Attorney fees and costs;

(d) Any other relief that the Court will find just and proper.

Dated: August 24, 2022

Respectfully submitted,

                                                 _____/*George Lambert*/
George Lambert, Esq.
D.C. bar #979327
1025 Connecticut Ave., #1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 952 1950
Email: LawDC10@gmail.com
Attorney for EKOPEL D.O.O.